# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 28, 2010

Lyle W. Cayce
Clerk

No. 09-30485

------------------------------------------------------------------------------------

IN RE: KATRINA CANAL BREACHES LITIGATION

------------------------------------------------------------------------------------

LOUISIANA STATE, Individually and on behalf of State of Louisiana, Division of Administration, Office of Community Development ex rel; JAMES D CALDWELL, also known as Buddy Caldwell, proper plaintiff party, in place of Charles C. Foti, Jr.,

Plaintiffs-Appellees

v.

ANPAC LOUISIANA INSURANCE COMPANY; AMERICAN NATIONAL GENERAL INSURANCE COMPANY; AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY; REPUBLIC FIRE AND CASUALTY INSURANCE COMPANY; AUTO CLUB FAMILY INSURANCE COMPANY; AEGIS SECURITY INSURANCE COMPANY; AIG CENTENNIAL INSURANCE COMPANY; AIU INSURANCE COMPANY; ALLSTATE INDEMNITY COMPANY; ALLSTATE INSURANCE COMPANY; AMERICA FIRST INSURANCE COMPANY; AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA; AMERICAN FAMILY INSURANCE; AMERICAN GENERAL PROPERTY INSURANCE COMPANY; AMERICAN INSURANCE COMPANY; AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY; AMERICAN MODERN INSURANCE GROUP; AMERICAN MODERN SURPLUS LINES INSURANCE COMPANY; AMERICAN RELIABLE INSURANCE COMPANY; AMERICAN SECURITY INSURANCE COMPANY; AMERICAN SUMMIT INSURANCE COMPANY; AMERICAN SOUTHERN HOME INSURANCE COMPANY; AMERICAN WESTERN HOME INSURANCE COMPANY; AMICA MUTUAL INSURANCE COMPANY; ARMED FORCES INSURANCE EXCHANGE; ASSURANCE COMPANY OF AMERICA; AUDUBON INSURANCE COMPANY; BALBOA INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYDS OF

No. 09-30485

LONDON, London Market Insurers; CHUBB INDEMNITY INSURANCE COMPANY; CHUBB CUSTOM INSURANCE COMPANY; CHUBB NATIONAL INSURANCE COMPANY; CLARENDON NATIONAL INSURANCE COMPANY; ECONOMY PREMIER ASSURANCE COMPANY; EMPIRE FIRE & MARINE INSURANCE COMPANY; EMPIRE INDEMNITY INSURANCE COMPANY; ENCOMPASS INSURANCE COMPANY OF AMERICA; ENCOMPASS PROPERTY AND CASUALTY COMPANY; FARMERS INSURANCE EXCHANGE; FEDERAL INSURANCE COMPANY; FIDELITY AND DEPOSIT INSURANCE COMPANY OF MARYLAND; FIDELITY NATIONAL INSURANCE COMPANY; FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY; FIREMAN'S FUND INSURANCE COMPANY; GREAT NORTHERN INSURANCE COMPANY; HANOVER AMERICAN INSURANCE COMPANY; HANOVER INSURANCE COMPANY; HARTFORD ACCIDENT & INDEMNITY COMPANY; HARTFORD CASUALTY INSURANCE COMPANY; HARTFORD FIRE INSURANCE COMPANY; HARTFORD INSURANCE COMPANY OF THE MIDWEST; HARTFORD INSURANCE COMPANY OF THE SOUTHEAST; ET AL; HOMESITE INSURANCE COMPANY; HORACE MANN INSURANCE COMPANY; HORACE MANN PROPERTY AND CASUALTY INSURANCE COMPANY; LAFAYETTE INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; LIBERTY MUTUAL FIRE INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; LOUISIANA FARM BUREAU MUTUAL INSURANCE COMPANY; LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY; MASSACHUSETTS BAY INSURANCE COMPANY; MERASTAR INSURANCE COMPANY; MERITPLAN INSURANCE COMPANY; METROPOLITAN CASUALTY INSURANCE COMPANY; METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY; NATIONAL LLOYDS INSURANCE COMPANY; NATIONAL SECURITY FIRE & CASUALTY COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF LOUISIANA; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA; OMEGA ONE INSURANCE COMPANY; SCOTTSDALE INSURANCE COMPANY; SECURITY PLAN FIRE INSURANCE COMPANY; SHELTER GENERAL INSURANCE COMPANY; SHELTER MUTUAL INSURANCE COMPANY; SOUTHWEST BUSINESS CORPORATION; STANDARD FIRE INSURANCE COMPANY; STATE FARM FIRE & CASUALTY COMPANY; STATE FARM GENERAL INSURANCE COMPANY; TRINITY UNIVERSAL INSURANCE

2

No. 09-30485

COMPANY; UNION NATIONAL FIRE INSURANCE COMPANY; UNITED FIRE AND CASUALTY COMPANY; UNITED FIRE AND INDEMNITY COMPANY; UNITED SERVICES AUTOMOBILE ASSOCIATION; UNITRIN AUTO AND HOME INSURANCE COMPANY; UNITRIN PREFERRED INSURANCE COMPANY; USAA; CASUALTY INSURANCE COMPANY; USAA GENERAL INDEMNITY COMPANY; USAA; VIGILANT INSURANCE COMPANY; VOYAGER INDEMNITY INSURANCE COMPANY; VOYAGER PROPERTY AND CASUALTY INSURANCE COMPANY; ZC STERLING CORPORATION; ZC STERLING INSURANCE AGENCY INC; ZURICH AMERICAN INSURANCE COMPANY; ZURICH NORTH AMERICA; METLIFE INC,

Defendants-Appellants

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before JONES, Chief Judge, PRADO, Circuit Judge, and O'CONNOR, District Judge.[*]

EDITH H. JONES, Chief Judge:

In this interlocutory appeal, the Defendants—over 200 insurance companies—challenge approximately 151,000 homeowner's insurance claims brought by the State of Louisiana based upon policyholders' purported assignments of policy rights to the State. Because no controlling Louisiana Supreme Court precedent has determined whether an insurance contract's anti-assignment clause prohibits *post-loss* assignments of policy rights, because this issue is case-dispositive, and because either the State or the insurers stand to lose billions of dollars in claims, we certify the post-loss assignment question to the Louisiana Supreme Court.

---

[*] District Judge, Northern District of Texas, sitting by designation.

No. 09-30485

## I. Factual Background and Procedural History

To provide relief in the aftermath of hurricanes Katrina and Rita, Congress appropriated federal funds, administered by the Department of Housing and Urban Development (HUD), to affected states. Louisiana distributed some of those funds via the "Road Home" program, which provided grants of up to 150,000 dollars to Louisiana homeowners to repair uninsured or under-insured property damage. Purporting to fulfill an obligation under federal law to "prevent recipients from receiving any duplication of benefits,"[1] the State required Road Home grant recipients to execute a "Limited Subrogation/Assignment Agreement." It stated, in pertinent part:

> I/we hereby assign to the State of Louisiana . . . to the extent of the grant proceeds awarded or to be awarded to me under the [Road Home] Program, all of my/our claims and future rights to reimbursement and all payments hereafter received or to be received by me/us: (a) under any policy of casualty or property damage insurance or flood insurance on the residence, excluding contents ("*Residence*") described in my/application for Homeowner's Assistance under the Program ("Policies"): (b) from FEMA, Small Business Administration, and any other federal agency, arising out of physical damage to the Residence caused by Hurricane Katrina and/or Hurricane Rita.

According to the State, the Road Home program created perverse incentives for insurance companies and insured homeowners—some insurers inadequately adjusted and paid grant-eligible homeowners' claims, and some grant-eligible homeowners had little motivation to file claims or challenge low insurance settlements. Consequently, Road Home applications and grant

---

[1] The State cites to 72 Fed. Reg. 70,472-01 (Dec. 11, 2007) to support its statement that "[f]ederal law demanded that States disbursing these funds "[e]stablish procedures to prevent recipients from receiving any duplication of benefits." The regulation, however, allocates this responsibility to the Secretary of HUD and outlines five steps HUD was taking to satisfy the directive. Louisiana's obligation derived from its HUD-approved Road Home Action Plan, which stated that "the State must not duplicate insurance of any type . . . or other payments received by the homeowner for structural repairs required for . . . damages [incurred during hurricanes Katrina and Rita]."

4

amounts drastically increased, creating a one billion dollar projected shortfall in the program.

To remedy this situation, and pursuant to the assignment agreements, the State sued the Defendants—allegedly all of the insurers who wrote property insurance in Louisiana at the time of the hurricanes—in state court in Orleans Parish. The State sought to recover the funds expended and anticipated to be expended under the Road Home program and a declaration of the insurers' duties under the "all risk" policies they had issued to Road Home applicants.

The Defendants successfully removed the case to federal district court under the Class Action Fairness Act (CAFA).[2] According to the Defendants, the insurance industry has paid more than 40 billion dollars to homeowners as a result of Katrina and Rita losses. The insurers argue that the State's suit is an attempt to obtain yet more money from the insurers, even in situations where the homeowner was satisfied with the amount paid, had already filed a lawsuit against the insurer, or had reached a settlement agreement. Moreover, the State brought suit without investigating whether the Defendants had actually failed to make sufficient payment on individual homeowners' claims.

The Defendants subsequently filed a Rule 12(b)(6) motion to dismiss, arguing, *inter alia*, that (1) the State's claims failed as a matter of law because anti-assignment clauses in the homeowner's policies invalidated the purported

---

[2] The State used the class action device because, at the time suit was filed, thousands of Road Home grant applications were pending and these future recipients had not yet executed assignments. The class was defined as:

> All current and former citizens of the State of Louisiana who have applied for and received or will receive funds through the Road Home Program, and who have executed or will execute a subrogation or assignment in favor or the State, and to whom insurance proceeds are due and/or owed for damages sustained to any such recipient's residence as a result of any natural or man made occurrence associated with Hurricanes Katrina and/or Rita under any policy of insurance . . . .

No. 09-30485

assignments to the State,[3] and (2) the State's claims are time-barred by the contractual suit limitation period in the policies if the insured did not sue the insurer or the State did not obtain an assignment within two years of the loss.

Making an *Erie* guess,[4] the district court denied the motion to dismiss, holding that the contractual anti-assignment provisions did not bar post-loss assignments under Louisiana law and that the State's filing of the putative class action lawsuit tolled the contractual suit limitation periods in the policies. The district court also denied the Defendants' motion for reconsideration, but certified that order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). This appeal followed.[5]

## II. Discussion

The parties have not moved this court to certify the post-loss assignment question to the Louisiana Supreme Court, but the State did not object to certification when questioned at oral argument. Moreover, Louisiana Supreme Court Rule XII, section 2, provides that certification "may be invoked by . . . any circuit court of appeal of the United States upon its own motion . . . ." We are acutely aware that "[c]ertification is not a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state," *Transcon. Gas Pipeline Corp. v. Transp. Ins. Co.*, 958 F.2d 622, 623 (5th Cir. 1992), but "certification may be advisable where

---

[3] The language of the various anti-assignment clauses is not identical. Many clauses state that "[a]ssignment of this policy will not be valid unless we give our written consent," and others state that "[n]o interest in this policy can be transferred without our written consent." The parties nonetheless agree that all of the insurance contracts contain an anti-assignment clause that, by its plain terms, purports to bar any assignment. The State does not contend that the insurers consented to the assignments.

[4] *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938).

[5] The parties briefed and argued  whether the limitations issue was properly before this court pursuant to the § 1292(b) certification order and, reaching the merits, whether the insurance contracts' suit limitation provisions bar some or all of the State's claims. For reasons of judicial economy, this court does not address these questions at this time.

6

important state interests are at stake and the state courts have not provided clear guidance on how to proceed." *Free v. Abbott Labs., Inc.*, 164 F.3d 270, 274 (5th Cir. 1999) (citing *Transcon.*, 958 F.2d at 623). Certification is advisable here.

## A. Louisiana Civil Code Article 2653

"When faced with unsettled questions of Louisiana law, [federal courts] adhere to Louisiana's civilian decision-making process, by first examining primary sources of law: the constitution, codes, and statutes." *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 270 (5th Cir. 2009). To determine whether the insurance contracts' anti-assignment clauses bar post-loss assignments to the State, the Defendants contend that Louisiana Civil Code article 2653 is the beginning and end of the matter. Article 2653 provides that "[a] right cannot be assigned when the contract from which it arises prohibits assignment of that right." Because the policies' anti-assignment clauses broadly prohibit *any* assignment without the insurers' consent, the insurers argue that the post-loss assignments to the State are invalid.

The State responds, and we agree, that Article 2653 begs the question presented in this case: whether Louisiana courts would interpret the anti-assignment clauses in these homeowner's insurance policies as prohibiting post-loss assignments. Louisiana interpretive rules provide that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046. The anti-assignment clauses at issue here are broadly worded and clearly do not exclude post-loss assignments from the prohibition, but, like Article 2653, Article 2046 does not end the inquiry because even unambiguous insurance contract provisions cannot conflict with statutory law or public policy. *See* 15 WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON, III, LA. CIV. L. TREATISE, Insurance Law and Practice § 4 (3d ed. 2006). Thus, the

issue before this court is whether the Louisiana Supreme Court would hold that a contractual prohibition on post-loss assignments violates public policy.

The Louisiana Supreme Court has not answered this question, so we "look to the decisions of intermediate state courts for guidance," *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 317 (5th Cir. 2002) (citations omitted). Unfortunately, the Louisiana appellate decisions conflict.

### B. *Geddes & Moss*, *Lucien Tile*, and the Majority Rule

The State points to a 1936 Louisiana appellate court case, *Geddes & Moss Undertaking & Embalming Co. v. Metro. Life Ins. Co.,* 167 So. 209 (La. Ct. App. 1936), which invalidated an anti-assignment clause as applied to a post-loss assignment of the right to life insurance proceeds. *Geddes & Moss* cited the "great weight of authority" in other jurisdictions and reflected in leading treatises that anti-assignment clauses are contrary to public policy when applied to post-loss assignments. *Id.* at 210. Indeed, the general majority rule supports the *Geddes & Moss* conclusion. *See* 44 Am. Jur. 2d *Insurance* § 787 (2009) ("General stipulations in policies prohibiting their assignment except with the insurer's consent . . . apply only to assignments before loss, and accordingly do not prevent an assignment of a claim or an interest in insurance money then due. . . . [A] provision against an assignment after loss is generally held unenforceable, as inconsistent with the covenant of indemnity or the right to assign a claim for money due, and as contrary to public policy."); 3 Couch on Ins. § 35:7 (". . . the great majority of courts adhere to the rule that general stipulations in policies prohibiting assignments thereof except with the consent of the insurer apply only to assignments before loss . . . the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim.") According to the cases, the predominant purpose of a no-assignment clause is to protect the insurer from unanticipated underwriting exposure, but "after events giving rise to the

insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity." *Id.*

The Defendants, however, direct this court's attention to *R. L. Lucien Tile Co. v. Am. Sec. Ins. Co.*, 8 So. 3d 753 (La. App. 4th Cir. 2009), a case decided shortly after the district court denied the insurers' Motion to Dismiss but which the district court declined to follow in refusing to reconsider. *Lucien Tile* involved property insurance covering wind and rain damage from Hurricane Katrina. The court enforced an anti-assignment clause to invalidate a post-loss assignment of all claims "against anyone . . . arising out of the ownership of" the insured property.[6]  *Id.* at 756. The court did so without identifying any public policy grounds that would justify narrowly construing the anti-assignment clause to allow post-loss assignments. Moreover, *Lucien Tile* is consistent with several cases from other jurisdictions that effectuate anti-assignment clauses against post-loss assignments. *See Del Monte Fresh Produce (Haw.) Inc. v. Fireman's Fund Ins. Co.*, 183 P.3d 734, 747 (Haw. 2007); *Holloway v. Republic Indem. Co.*, 147 P.3d 329, 334 (Or. 2006); *Conoco, Inc. v. Republic Ins. Co.*, 819 F.2d 120, 124 (5th Cir. 1987) (applying Texas law).

Thus, far from providing clear guidance as to how the Louisiana Supreme Court would proceed, Louisiana appellate court decisions, as well as the cases of other jurisdictions, are inconsistent.

## C. Public Policy Implications

Complicating matters further, it is not clear to us that the facts of *this* case comport with the policy considerations underlying the majority rule. Unlike

---

[6]  The State incorrectly describes *Lucien Tile* as "simply ruling that the two documents at issue failed to assign Lucien Tile any rights under the ASIC policy." It is true that an initial assignment was held not to apply to the insurance policy, but *Lucien Tile* never ruled that the second, broader assignment of all claims "against anyone . . . arising out of ownership of" the insured property was insufficient potentially to assign rights against the insurer. The court held flatly that the assignment, lacking the insurer's consent, was invalid.

No. 09-30485

*Geddes & Moss*, this case does not involve a simple transfer of a right to claim an undisputed amount of money due. Here, more akin to pre-loss assignments, contractual duties are indeed transferred to the State because the policies impose reciprocal duties on insureds to provide timely notice, substantiate their claims, and mitigate losses. Nor does this case contemplate a simple change in the insured's identity, resulting in no increased risk to the insurer. Instead, the State seeks to re-litigate claims that may have already been pursued by the insured, subjecting the Defendants to multiple lawsuits by a third party whose only evidence of underpayment is that Road Home applications increased to the point of a projected budget shortfall.

When certifying an insurance interpretation to the Supreme Court of Alabama, this court explained that "[w]hen the state law is in doubt especially on the underlying public policy aims, it is in the best administration of justice to afford the litigants a consistent final judicial resolution by utilizing the certification procedure." *Barnes v. Atl. & Pac. Life Ins. Co. of Am.*, 514 F.2d 704, 706 (5th Cir. 1975). We follow that admonition here and certify the question.

## CERTIFICATION

Because interpretation of the policy provisions at issue is a matter of Louisiana law that will determine the outcome of this case and because there are no clear controlling precedents in the decisions of the Louisiana Supreme Court, we hereby invoke the certification privilege granted by Louisiana Supreme Court Rule XII.[7]

---

[7] Louisiana Supreme Court Rule XII, section 1 reads:

When it appears to the Supreme Court of the United States, or to any circuit court of appeal of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the supreme court of this state, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Louisiana for rendition of a judgment or opinion

No. 09-30485

We certify the following question to the Louisiana Supreme Court:

1)    Does an anti-assignment clause in a homeowner's insurance policy, which by its plain terms purports to bar any assignment of the policy or an interest therein without the insurer's consent, bar an insured's *post-loss* assignment of the insured's claims under the policy when such an assignment transfers contractual obligations, not just the right to money due?

If the Louisiana Supreme Court accepts this certificate, the answers provided will determine the outcome of this appeal. We disclaim any intent that the Louisiana Supreme Court confine its reply to the precise form or scope of the legal questions certified. We retain cognizance of this appeal while it is pending before the Louisiana Supreme Court and transfer the record and appellate briefs with our certification to the Supreme Court of Louisiana.

**QUESTION CERTIFIED.**

---

concerning such questions or propositions of Louisiana law. This court may, in its discretion, decline to answer the questions certified to it.