JOHNSON, Justice.
| ,We accepted the certified question presented to this Court by the United States *957 Fifth Circuit Court of Appeals in In Re: Katrina Canal Breaches Litigation, 613 F.3d 504 (5th Cir.2010).[1] The question presented is “Does an anti-assignment clause in a homeowner’s insurance policy, which by its plain terms purports to bar any assignment of the policy or an interest therein without the insurer’s consent, bar an insured’s post-loss assignment of the insured’s claims under the policy when such an assignment transfers contractual obligations, not just the right to money due?”
For the reasons set forth below, we answer the question as follows:[2] There is no public policy in Louisiana which precludes an anti-assignment clause from applying to post-loss assignments. However, the language of the anti-assignment clause must clearly and unambiguously express that it applies to post-loss assignments, and thus it must be evaluated on a policy by policy basis.
| {¡FACTS AND PROCEDURAL HISTORY[3]
To provide relief in the aftermath of Hurricanes Katrina and Rita, Congress appropriated federal funds, administered by the Department of Housing and Urban Development (“HUD”), to affected states. Louisiana distributed some of those funds via the “Road Home” program, which provided grants of up to $150,000 to Louisiana homeowners to repair uninsured or under-insured property damage. Purporting to fulfill an obligation under federal law to “prevent recipients from receiving any duplication of benefits,” the State required more than 150,000 Road Home grant recipients to execute a “Limited Subrogation/Assignment Agreement.”[4] It stated, in pertinent part:
I/we hereby assign to the State of Louisiana ... to the extent of the grant proceeds awarded or to be awarded to me under the [Road Home] Program, all of my/our claims and future rights to reimbursement and all payments hereafter received or to be received by me/ us: (a) under any policy of casualty or property damage insurance or flood insurance on the residence, excluding contents (“Residence”) described in my/application for Homeowner’s Assistance under the Program (“Policies”): (b) from FEMA, Small Business Administration, and any other federal agency, arising out of physical damage to the Residence caused by Hurricane Katrina and/or Hurricane Rita.
According to the State, the Road Home program created perverse incentives for insurance companies and insured homeowners: some insurers inadequately adjusted and paid grant-eligible homeowners’ claims, and some grant-eligible home *958 owners had little motivation to file claims or challenge low insurance ^settlements. Consequently, Road Home applications and grant amounts drastically increased, creating a one billion dollar projected shortfall in the program.
To remedy this situation, and pursuant to the assignment agreements, the State filed suit against more than two hundred insurance companies-allegedly all of the insurers who wrote property insurance in Louisiana at the time of the Hurricanes-in state court in Orleans Parish. The State sought to recover the funds expended and anticipated to be expended under the Road Home program and a declaration of the insurers’ duties under the “all risk” policies they had issued to Road Home applicants.
The Defendants successfully removed the case to federal district court under the Class Action Fairness Act. According to the Defendants, the insurance industry has paid more than forty billion dollars to homeowners as a result of losses from Hurricanes Katrina and Rita. The insurers argue that the State’s suit is an attempt to obtain yet more money from the insurers, even in situations where the homeowner was satisfied with the amount paid, had already filed a lawsuit against the insurer, or had reached a settlement agreement. Moreover, the insurers contend the State brought suit without investigating whether the Defendants had actually failed to make sufficient payment on individual homeowners’ claims.
The Defendants subsequently filed a Federal Rule 12(b)(6) motion to dismiss in the federal district court, arguing in part that the State’s claims failed as a matter of law because anti-assignment clauses in the homeowners’ policies invalidated the purported assignments to the State.
Making an Erie[5] guess, the federal district court denied the motion to dismiss, holding that the contractual anti-assignment provisions did not bar post-loss assignments under Louisiana law. The federal district court also denied the LDefendants’ motion for reconsideration, but certified that order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). An appeal to the United States Fifth Circuit Court of Appeals followed. Because “interpretation of the policy provisions at issue is a matter of Louisiana law that will determine the outcome of this case and because there are no clear controlling precedents in the decisions of the Louisiana Supreme Court,” the Fifth Circuit invoked the certification privilege.
DISCUSSION

Parties’ Contentions

The insurers contend the post-loss assignments to the State are invalid as a matter of law. They argue the anti-assignment clauses in the policies are enforceable based on Louisiana Civil Code article 2653[6], which provides that a right cannot be assigned when the contract from which that right arises prohibits assignment of the right. The insurers note the anti-assignment clauses in the insurance contracts are broadly worded and contain no exception for post-loss assignments.
Additionally, the insurers argue this Court should not create a judicial exception to Article 2653 as a matter of public policy. The legislature, not the courts, *959 creates public policy and thus only the legislature can create an exception to La. C.C. art. 2658. Moreover, the insurance industry is highly regulated, and the Commissioner has never imposed any restrictions on anti-assignment clauses or required that they contain exceptions for post-loss assignments.
Furthermore, even if this Court were to consider public policy, it favors enforcement of the anti-assignment clauses under the circumstances of this case. TheRRoad Home assignments are not merely assignments of perfected or liquidated claims for money due. There is a difference between a liquidated claim for policy proceeds, where an insurer simply has to pay an undisputed amount of money, and an un-liquidated claim for additional damage to the property, which has not yet been proven. This distinction is critical because the insured must comply with various obligations under a property insurance policy in order to assert a claim, and the insured’s duties cannot be transferred to the State. To allow the assignments in this case results in increased risk to the insurers because they would be compelled to litigate thousands of previously closed homeowners’ insurance claims where the State has very limited, if any, access to the relevant loss information to which the insurers are contractually entitled. The insurers contend they would be further prejudiced because, in many instances, they would be required to defend two separate lawsuits seeking to recover the same insurance claim-one filed by the policy holder and the current suit filed by the State-thus imposing additional costs and possibly leading to inconsistent results. The insurers would be compelled to litigate against the State, with which they did not contract and with which they never anticipated having to litigate. And, in many cases, the property damage was repaired, or the home torn down, long ago which prejudices the insurers’ ability to adequately investigate the State’s new claims and substantially increases the insurers’ administrative costs and legal fees.
By contrast, the State argues Article 2653 is not determinative. That article merely bars assignment of a right if the contract prohibits assignment of that right. These insurance contracts do not bar assignments post-loss. These contracts generally state that “assignment of the policy” is not valid unless the insurer consents, or that “no interest in the policy” can be transferred without consent. Post-loss assignments | fiof payment rights do not qualify as “assignment of a policy” or as a transferred “interest in a policy,” and therefore fall outside of an anti-assignment clause. Virtually every jurisdiction strictly interprets such anti-assignment clauses as not including an assignment of payment rights after a loss occurs. Such post-loss assignments merely transfer an accrued right to payments and do nothing to alter the risk originally assumed by the insurance company. The prevailing national jurisprudence makes no distinction between liquidated and unliquidated claims. This interpretation comports with the Civil Code regarding contract interpretation because Article 2047[7] provides that contractual terms must be given their generally prevailing meaning. The State also argues this Court does not have to create a public policy exception to La. C.C. art. 2653. If this Court follows the prevailing national rule, the Road Home assignments simply fall outside the anti-assignment clauses in *960 the homeowners’ property insurance policies.
Further, the State argues this Court’s answer to the certified question should not prematurely address any purported defenses to the State’s claims. The assignments give the State the right to seek payments, but the insurers aré still entitled to raise valid defenses to the payment of claims. The Road Home assignments simply place the State in the insureds’ shoes with a limited right to seek payments duplicative of Road Home disbursements. The assignments do not facially confer additional contractual duties to the State.

Law and Analysis

Generally, rights arising from a contract are assignable unless the law, the terms of the contract, or the nature of the contract preclude such assignment. La. C.C. 17art. 1984. Louisiana Civil Code article 2642 further provides that all rights may be assigned, except those pertaining to strictly personal obligations. Central to the issue involved in this case is Civil Code article 2653, which provides, in pertinent part: “A right cannot be assigned when the contract from which it arises prohibits the assignment of that right.”[8] (Emphasis added) The language of Article 2653 is broad. It does not exclude insurance contracts, nor does the Article expressly exclude post-loss assignments. Thus, on its face, Article 2653 appears to apply to all assignments. As noted by the Fifth Circuit, the insurers contend Article 2653 is “the beginning and the end of the matter.” 613 F.3d at 509. However, pointing out that insurance contract provisions cannot conflict with statutory law or public policy, the Fifth Circuit agreed with the State that “Article 2653 begs the question presented in this case: whether Louisiana courts would interpret the anti-assignment clauses in these homeowner’s insurance policies as prohibiting post-loss assignments.” Id. at 510. In certifying the question to this Court, the Fifth Circuit stated the specific issue before it as “whether the Louisiana Supreme Court would hold that a contractual prohibition on post-loss assignments violates public policy.” Id. We conclude there is no public policy in Louisiana to prevent parties from contractually prohibiting post-loss assignments.
This Court has never addressed public policy considerations relative to post-loss assignments. The most relevant appellate case on the issue is Geddes & Moss Undertaking & Embalming Co. v. Metro. Life Ins. Co., 167 So. 209 (La.App.Orl.1936). In that case, Metropolitan Life Insurance Co. (“Metropolitan”) issued policies of insurance on the .life of Silas The-rell. Pauline Rhinehart, the daughter of the insured, was designated as beneficiary. After Mr. Therell died, Ms. Rhinehart ^assigned her rights to Geddes & Moss Undertaking & Embalming Co. (“Ged-des”). Subsequently, Geddes filed suit against Metropolitan, seeking to recover on the policy. Metropolitan filed an exception of no cause of action, arguing the assignment to Geddes was invalid because of a policy prohibition against assignment of “any benefits” due under the policy. The trial court maintained the exception of no cause of action, and Metropolitan appealed. The court of appeal reversed. After reviewing jurisprudence from other states, the court concluded the weight of authority indicated an assignment after a loss was not prohibited. The court explained:
It appears to us, however, that a distinction is to be made between the assignment of a policy before and af *961 ter loss has accrued thereon, and that the majority opinion sustains the view that such stipulations in policies do not prevent assignment after the loss has occurred.
“General stipulations in policies, prohibiting assignment thereof, except with the insurer’s consent, or upon giving some notice, on like conditions, have universally been held to apply only to assignments before loss, and, accordingly, noncompliance or non-conformity therewith does not prevent an assignment, after loss, of the claim or interest of the insured in the insurance money then due in respect to the loss.” Couch on Insurance, vol. 6, p. 5276, § 1459.
“An assignment of the policy after loss is in effect no more than an assignment of a claim against the company, and is valid though the policy expressly provides against an assignment either before or after loss. Such a stipulation, as applied to an assignment after loss, is void as against public policy.” Cooley’s Briefs on Insurance, vol. 7, p. 6310. “A provision in a policy against assignment does not apply to assignment after loss, and a specific provision against such an assignment is null and void, as inconsistent with the covenant of indemnity and contrary to public policy.” Ruling Case Law, verbo “Insurance,” vol. 14, p. 182.
“It is further contended that the policy is void because of a provision therein that it shall be void ‘If it be assigned’ without the indorsement of the secretary of the insurer. Such provision is not applicable in the instant case, because the assignment here was not of the policy before 19the death of the insured, but of the cause of action accruing thereon after loss. 14 R.C.L. 1004. An assignment of a policy, and the right to recover upon it, after maturity, is valid, regardless of the conditions of the policy. Kerr on Insurance, 688.” Metropolitan Life Ins. Co. v. Lanigan, 74 Colo. 386, 222 P. 402, 403.
Geddes, 167 So. at 210 (Emphasis added).
While Geddes was decided prior to the enactment of Article 2653, Geddes correctly expresses the prevailing American rule distinguishing between pre-loss and post-loss assignments.[9] In differentiating between the two, courts reason that allowing an insured to assign the right to coverage (pre-loss) would force the insurer to protect an insured with whom it had not contracted-an insured who might present a greater level of risk than the policyholder. However, allowing an insured to assign its right to the proceeds of an insurance policy (post-loss) does not modify the insurer’s risk. The insurer’s obligations are fixed at the time the loss occurs, and the insurer is obligated to cover the loss agreed to under the terms of the policy. This obligation is not altered when the claimant is not the party who was originally insured. After the loss, the anti-assignment clause serves only to limit the free assignability of claims, which is not favored by the law, and such restrictions on an insured’s right to assign its proceeds are generally rendered void. See Lee R. Russ & Thomas F. Segalla, 3 Couch on Insurance 3d, § 35:7 (2005); Richard A. Lord, 29 Willi-ston on Contracts § 74:22 (4th ed.); 44 Am Jur.2d Insurance § 787.
*962 Since Article 2653 was enacted, the only Louisiana appellate decision relative to this issue is R.L. Lucien Tile Co. v. Am. Sec. Ins. Co., 08-1190 (La.App. 4 Cir. 3/11/09), 8 So.3d 753. In that case, R.L. Lucien Tile Company, Inc. (“Lucien Tile”) purchased property from Joshua and Sandy Cage, by quitclaim deed, for the sum of $100. Lucien Tile did not refinance or assume the Cages’ mortgage. Instead, Lucien Tile paid the Cages’ monthly note on the existing mortgage with EMC Mortgage Corporation (“EMC”). At all relevant times, EMC held a mortgage on the insured property, and American Security Insurance Company (“ASIC”) maintained the insurance policy for damages caused by wind and rain. The named insured under this policy was EMC, with the Cages as additional insureds.
After Hurricane Katrina, ASIC received notice that the property sustained damage. The notice identified the claimant as Sandy Cage, the named insured as EMC, and the additional insureds as Joshua and Sandy Cage. ASIC paid policy benefits to EMC and the Cages. Subsequently, Lucien Tile filed a petition for damages against ASIC, claiming rights to policy benefits. Thereafter, ASIC moved for summary judgment, arguing Lucien Tile was neither an insured nor additional insured under the policy. ASIC further argued the policy contained an anti-assignment clause, and Lucien Tile had no valid assignment of the Cages’ rights against ASIC. Consequently, Lucien Tile had no standing to bring the action.
The trial court granted ASIC’s motion for summary judgment. Lucien Tile appealed, and the court of appeal affirmed. The court noted two documents relied on by Lucien Tile: the November 2, 2005, document entitled, “ASSIGNMENT AND TRANSFER OF ALL RIGHTS AND CLAIMS,” which was signed by the Cages; and the March 31, 2008, document styled “Supplement to our November 2, 2005 Assignment and Transfer of All Rights and Claims,” which stated “in addition to and included under” the previous assignment, are “all claims against anyone arising out of the ownership of or related to our previous ownership of 8833 Green InStreet.” However, the court of appeal found the insurance policy “clearly and unambiguously prohibits the insured from assigning the policy without ASIC’s written consent. Therefore, absent a valid assignment of rights to which the insurer, ASIC, consented, Lucien Tile has no standing to sue.” Lucien Tile, 8 So.3d at 756-57 (Emphasis added).
Although Lucien Tile involved a post-loss assignment of claims under an insurance policy, it provides us with no guidance because it does not address the distinction between pre-loss and post-loss assignments, nor does it address the application of Article 2653.
The Louisiana Civil Code does not place limits on parties’ contractual right to prohibit the assignment of insurance proceeds. In fact, Article 2653 contemplates that the parties to a contract may contract to limit assignability. Thus, while the Louisiana legislature has clearly indicated an intent to allow parties freedom to assign contractual rights, by enacting La. C.C. art. 2653 it has also clearly indicated an intent to allow parties freedom to contractually prohibit assignment of rights. We recognize the vast amount of national jurisprudence distinguishing between pre-loss and post-loss assignments and rejecting restrictions on post-loss assignments, however we find no public policy in Louisiana favoring free assign-ability of claims over freedom of contract. This court has long recognized that the freedom to contract is an important public policy. See Barrera v. Ciolino, 92-2844 *963 (La.5/5/94), 636 So.2d 218, 223. We have explained:
[Pjarties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art. 1971. “Freedom of contract” signifies that parties to an agreement have the right and power to construct their own bargains. In a free enterprise system, parties are free to contract except for those instances where the government places restrictions for reasons of public policy. The state may legitimately restrict the parties’ right to contract if the proposed bargain is found to have some deleterious effect on the public or to contravene some other 112matter of public policy.
Louisiana Smoked Products, Inc. v. Savoie’s Sausage and Food Products, Inc., 96-1716 (La.7/1/97), 696 So.2d 1373,1380-81.
Nothing in the facts of this case support a finding that the non-assignment clauses contained in the policies have a deleterious effect on the public or that they violate public policy. Further, public policy determinations are better suited to the legislative, rather than the judicial forum. See Marcus v. Hanover Ins. Co., Inc., 1998-2040 (La.6/4/99), 740 So.2d 603; State v. Edwards, 2000-1246 (La.6/1/01), 787 So.2d 981. Thus, if any exception to Article 2653 should be created relative to post-loss assignments, it is up to the legislature to create such an exception.
Although we hold that parties may contract to prohibit post-loss assignments, we also hold the contract language must clearly and unambiguously express that the non-assignment clause applies to post-loss assignments. An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts in the Civil Code. Louisiana Ins. Guaranty Assn. v. Interstate Fire & Casualty Co., 630 So.2d 759, 763 (La.1994); Lewis v. Hamilton, 94-2204 (La.4/10/95), 652 So.2d 1327, 1329. Insurers are entitled to limit their liability and to impose reasonable conditions upon the policy obligations absent a conflict with statutory provisions or public policy. Louisiana Ins. Guaranty Assn., 630 So.2d at 763. However, because insurance policies are adhesionary in nature, any contradiction or ambiguity in the contract must be strictly construed against the insurer, the party who drafted the policy. La. C.C. art. 2056[10]; Louisiana Insurance Guaranty Assn., 630 So.2d at 764; Lewis, 652 So.2d at 1330.
| ^Insurance is a highly regulated industry, and insurers are well aware of the distinction between pre-loss and post-loss assignments. Post-loss assignment of claims arising under the policy is not equivalent to the assignment of the policy itself, or an interest in the policy. Given the categorical difference, we find it incumbent on insurers to include clear and unambiguous language in their policies. We do not find it necessary to formulate a test consisting of specific terms or words, however the insurer must include language making it clear and explicit that post-loss assignments are prohibited under the policy-
We note the varying language in the insurance policies regarding assignment of rights, and further note that the hundreds of relevant polices are included in the record. However, we decline to review the *964 language of each on a policy-by-policy basis, and instead leave that task to the federal district court on the merits.

CONCLUSION

There is no public policy in Louisiana which precludes an anti-assignment clause from applying to post-loss assignments. However, the language of the anti-assignment clause must clearly and unambiguously express that it applies to post-loss assignments. Thus, it is necessary for the federal district court to evaluate the relevant anti-assignment clauses on a policy-by-policy basis to determine whether the language is sufficient to prohibit post-loss assignments.

DECREE

We answer the certified question as set forth in this opinion. Pursuant to Rule XII, Supreme Court of Louisiana, the judgment rendered by this Court upon the question certified shall be sent by the Clerk of this Court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties.
CERTIFIED QUESTION ANSWERED.

. In Re: Katrina Canal Breaches Litigation, 2010-1823 (La.10/29/10), 51 So.3d 1.

. The Fifth Circuit provided: "We disclaim any intent that the Louisiana Supreme Court confine its reply to the precise form or scope of the legal questions certified.” 613 F.3d at 512.

. We set out the facts primarily as delineated by the United States Fifth Circuit. 613 F.3d at 507-09.

. According to the State, the guidelines for administering Road Home funds were set forth by the Louisiana Recovery Authority ("LRA”) in its 2006 Road Home Housing Programs Action Plan Amendment for Disaster Recovery Funds ("action plan”). That plan contains the requirement that fund recipients agree to subrogate claims for unpaid and outstanding insurance claims back to the Program. The LRA was granted authority to develop the action plan by the legislature in the 2006 Legislative session. Act No. 5, 2006 1st Extraordinary Sess. (La.2006); S.C.R. 63, 2006 Reg. Sess. (La.2006). Such plan was required to, and did, obtain approval by the governor, the legislature, and the HUD.

. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

. La. C.C. art. 2653 provides: "A right cannot be assigned when the contract from which it arises prohibits the assignment of that right. Such a prohibition has no effect against an assignee who has no knowledge of its existence.”

. La. C.C. art. 2047 provides: The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter.

. This article was enacted by Acts 1993, No. 841, § 1, eff. Jan. 1, 1995.

. See, e.g., Conrad Brothers v. John Deere Ins. Co., 640 N.W.2d 231, 237 (Iowa 2001) (noting the weight of authority supporting the same rule and citing to cases from Wisconsin, Pennsylvania, Michigan, Texas, North Carolina, Delaware, Missouri, Arizona, Florida, Illinois, New Jersey, Washington, and West Virginia); Antal’s Restaurant, Inc. v. Lumbermen's Mutual Casualty Co., 680 A.2d 1386, 1388 (D.C.1996) (citing cases from Alabama, Maine, Wisconsin, California, Georgia, Illinois and New York).

. La. C.C. art. 2056 provides: In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.