# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 2, 2022

Lyle W. Cayce
Clerk

No. 21-30148

Mark Wightman, Doctor of Dental Surgery; Courtney Wightman, Doctor of Dental Surgery; Wightman Family Dental, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Ameritas Life Insurance Corporation; DenteMax, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-11628

Before Wiener, Graves, and Ho, *Circuit Judges*.

Per Curiam:*

This is an appeal from a partial final judgment dismissing as untimely plaintiffs' claims arising under Louisiana's Preferred Provider Organizations Act ("PPO Act"), La R.S. 40:2203.1-2210. The district court deemed such

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

claims delictual and thus subject to a one-year prescriptive period. The Supreme Court of Louisiana has not addressed this issue. Last year, it determined that claims arising under the Balance Billing Act, La. R.S. 22:1871, are delictual. That act is arguably similar to the PPO Act. *See DePhillips v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par*., 2019-01496 (La. 7/9/20); 2020 WL 3867212, reh'g denied, 2019-01496 (La. 9/9/20); 2020 WL 5405925. However, Louisiana's Third Circuit Court of Appeal more recently distinguished *DePhillips* and affirmed its previous caselaw holding PPO Act claims contractual. For the reasons that follow, we conclude that the Supreme Court of Louisiana should have the chance to resolve this issue in the first instance.

I.

Plaintiff-appellant Wightman Family Dental, L.L.C., is a Louisiana limited liability corporation. Its members, plaintiffs-appellants Mark Wightman D.D.S. and Courtney Wightman D.D.S., are also Louisiana citizens. Defendant-appellee Ameritas Life Insurance Corp. is a Nebraska corporation. Plaintiffs are dentists who own and operate Wightman Family Dental in St. Bernard Parish, Louisiana. DenteMax—the other defendant but not a party to this appeal—and Ameritas are "group purchasers and brokers." Plaintiffs characterize Ameritas as a "silent PPO,"[1] which Ameritas disputes. This lawsuit arises out of a Preferred Provider

---

[1] A PPO (Preferred Provider Organization) is a ". . . contractual agreement or agreements between a provider or providers and a group purchaser or purchasers to provide for alternative rates of payment specified in advance for a defined period of time in which the provider agrees to accept these alternative rates of payment offered by the group purchasers to their members whenever a member chooses to use its services." LA. R.S. 40:2202(5)(a). A "silent PPO" is an editorialized term for undisclosed networks in which payers or managed care companies assume a preferential rate, which the network does not disclose to providers.

No. 21-30148

Organization Agreement ("PPO Agreement") dated February 16, 2009, that DenteMax executed with Mark Wightman.

Plaintiffs entered the PPO Agreement to expand their client base via access to DenteMax's network. Under the PPO Agreement, plaintiffs agreed to join the DenteMax PPO Network ("DenteMax Network"), discount fees for services provided to Participants in the DenteMax PPO Network, and allow DenteMax to grant Payors and Participants access to those discounted rates. In May 2012 Ameritas leased the DenteMax PPO network ("Network Agreement"), which granted Ameritas access to the reduced PPO reimbursement rate that plaintiffs had provided to DenteMax. The Network Agreement allowed Ameritas to use the DenteMax Network rates to reimburse any participating Provider of services rendered to Ameritas' insureds. The district court found that plaintiffs received no notice of the Network Agreement from DenteMax or Ameritas.

Later that year, plaintiffs' patients presented Ameritas' benefit cards, but after plaintiffs performed services and sought reimbursement, they were paid a lower rate that they say was neither disclosed nor published on patients' cards. Thus, when Ameritas' insureds presented their benefit cards to plaintiffs, plaintiffs believed they would be reimbursed at their standard rate.

When the plaintiffs learned that they would be reimbursed at a reduced rate, they contacted DenteMax and learned of the Network Agreement. Plaintiffs then asked to be terminated from the DenteMax Network. Plaintiffs later stipulated to Ameritas' counsel that all relevant transactions in which Ameritas paid plaintiffs for dental services using the DenteMax Network rates happened before January 1, 2017, and that Ameritas last used the DenteMax Network rates to reimburse plaintiffs on June 1, 2016.

No. 21-30148

On July 11, 2019, plaintiffs filed their original complaint asserting claims against Ameritas and DenteMax for breach of contract and for violations of Louisiana's PPO Act, which requires insurers to notify health care providers when reimbursing those providers at a reduced PPO rate. Specifically, plaintiffs allege that Ameritas is liable for the exemplary damages under La. R.S. 40:2203.1(G) because: (i) plaintiffs had no knowledge of the Network Agreement; (ii) plaintiffs expected Ameritas to reimburse them at their full standard rate, as Ameritas' benefit cards did not specifically identify Ameritas as being part of the DenteMax Network; and (iii) Ameritas improperly underpaid plaintiffs based on the DenteMax Network rate.

Ameritas and DenteMax filed separate motions to dismiss under rule 12(b)(6), which the district court granted in part and denied in part. Noting lack of caselaw on the PPO Act's applicability to dental services, the district court reasoned that La. R.S. 40:2203.1 covers dentists, and thus denied Ameritas' motion to dismiss on that ground. The plaintiffs then filed an amended complaint converting this case into a putative class action. DenteMax and Ameritas again moved to dismiss, asserting for the first time that plaintiffs' claims were prescribed under Louisiana law. The district court converted these motions to motions for summary judgment after DenteMax submitted plaintiffs' stipulation about their termination from the PPO Agreement.[2] On October 27, 2020, the district court granted Ameritas' motions and dismissed plaintiffs' claims for violations of La. R.S. 40:2203.1,

---

[2] Plaintiffs alleged in their amended complaint that the "actions of Defendants [in refusing to pay the un-discounted rate] are an ongoing breach and continued violation of La R.S. 40:2203.1." When DenteMax attached exhibits to its motion to dismiss showing that plaintiffs terminated their contract with DenteMax in February 2016, the district court notified the parties that it would convert the motions to dismiss into summary judgment motions.

No. 21-30148

for unjust enrichment and for injunctive relief. Specifically, the district court concluded that the plaintiffs' chapter 40 claims are prescribed delictual claims, and that the plaintiffs could not bring an unjust-enrichment claim against Ameritas because, but for prescription, they would have had a chapter 40 claim against Ameritas. The district court dismissed Ameritas from this case on March 11, 2021, and the plaintiffs timely appealed to this court.

II.

This case involves the application of Louisiana law. To determine Louisiana law, we first look to the final decisions of the Supreme Court of Louisiana. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)). In the absence of a final decision from the Supreme Court of Louisiana, we "must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case." *Id.* When making the *Erie* guess, we "must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes." *Id.*

Louisiana law requires PPOs to inform health care providers, before service is rendered, of any PPO agreements that will affect the providers. La. R.S. 40:2203.1(A) provides in pertinent part that the notice duties "shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers," while exempting group purchasers that provide health benefits "through [their] own network." If a PPO fails to comply with the notice requirements, the provider is not bound by the preferred-provider agreement. La. R.S. 40:2203.1(D). Additionally, La. R.S. 40:2203.1(G), the damages provision, allows a provider to recover from an offending group purchaser "double the fair market value of the medical services provided, but in no event less than

the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court." Crucial to this case, the PPO Act does not set out a prescriptive period for bringing an action for violation of La. R.S. 40:2203.1's notice requirements.

The threshold question in this case concerns the proper prescriptive period for PPO Act claims, because Louisiana applies quite different prescriptive periods to delictual claims and contractual claims. Assuming that the PPO Act applies to dental services, plaintiffs' PPO Act claims are time-barred if those claims are delictual, but not if those claims are contractual. We may certify to Supreme Court of Louisiana dispositive questions of Louisiana law for which "there are no clear controlling precedents in the decisions of the supreme court[.]" Sup. Ct. of La. R. XII, § 1. Finding contradictory authority for this question, we certify this question to the Supreme Court of Louisiana.

A.

In Louisiana, the proper prescriptive period to be applied in any action depends on the nature of the cause of action. *Roger v. Dufrene*, 613 So. 2d 947 (La. 1993). When a statute does not set forth an applicable prescriptive period, courts examine the nature of the duty breached to determine whether the action is "contractual," falling within Louisiana Civil Code article 3499 or "delictual," falling within Louisiana Civil Code article 3492. *DePhillips*, 2020 WL 3867212, at *4. "The classic distinction between damages ex contractu and damages ex delicto is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons." *State ex rel. Guilbeau v. BEPCO, L.P.*, 2020-0429 (La. App. 1 Cir. 9/20/21), -- So. 3d --, 2021 WL 4260674, at *6 (Guidry, J., writing separately) (citing *DePhillips*). Where a claim arises out of the "breach of duty as imposed by law, the

No. 21-30148

damages arose ex delicto, and [are] extinguished by the prescription of one year." *DePhillips*, 2020 WL 3867212, at *7 (quotation marks and emphases omitted). *See* LA. CIVIL CODE art. 3492 ("Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.").

As noted above, the Supreme Court of Louisiana has yet to resolve whether PPO Act claims are delictual or contractual. Louisiana's Third Circuit Court of Appeals addressed this issue a decade ago and labeled such claims contractual. *See Gunderson v. F.A. Richard & Assocs.*, 2009-1498 (La. App. 3 Cir. 6/30/10), 44 So. 3d 779, 784. The district court, however, concluded that the Supreme Court of Louisiana abrogated *Gunderson* in the more recent *DePhillips* case. In *DePhillips*, the Louisiana Supreme Court was asked to classify claims arising under the Health Care Consumer Billing and Disclosure Protection Act, La. R.S. 22:1871, *et seq.* ("Balance Billing Act" or "Act"). That statute prohibits a contracted health care provider from collecting more than the contracted reimbursement rate. *See* LA. R.S. 22:1874. Providers owe this duty to "an enrollee or insured," which is defined as "a person who is enrolled in or insured by a health insurance issuer for health insurance coverage." LA. R.S. 22:1872(11). The Louisiana Supreme Court reasoned that "this is a duty owed by *all* 'contracted health care providers' to *all* 'enrollees or insureds,'" and is not specific to any individual. It is a general duty imposed by statute and, thus, does not arise from any special obligation owed by [defendant health care provider] to [the plaintiff]." *DePhillips*, 2020 WL 3867212, at *4 (emphases in original). The Court thus concluded, albeit over three dissents, that Balance Billing Act claims are delictual. The Court cited, by way of contrast, its recent decision in *Smith v. Citadel Insurance Co.*, 2019-00052 (La. 10/22/19), 285 So. 3d 1062, 1067. In *Smith*, the Court unanimously held that first-party bad-faith claims against insurers are contractual, not delictual. The Court reasoned

7

that "[t]he duty of good faith is an outgrowth of the contractual and fiduciary relationship between the insured and the insurer, and the duty of good faith and fair dealing emanates from the contract between the parties." *Smith*, 285 So. 3d at 1069.

There are some similarities between the PPO Act and the Balance Billing Act. Like the Balance Billing Act, the PPO Act creates notification duties on all PPO-type organizations owed to all health care providers, without regard to whether there exists a contract between the PPO and the provider. Here, for example, there is no contract between plaintiffs and Ameritas. However, Louisiana's Third Circuit Court of Appeals has issued a decision affirming its view that PPO Act claims are contractual, *DePhillips* notwithstanding. *Williams v. Bestcomp, Inc.*, 2020-106 (La. App. 3 Cir. 12/15/21), 2021 WL 5913438. In *Williams*, the intermediate court likened PPO Act claims more to claims for good faith and fair dealing—held contractual in *Smith*—than to claims arising under the Balance Billing Act, because PPO Act duties presuppose the existence of a contractual PPO agreement. 2021 WL 5913438, at *17. Here, for example, plaintiffs' claims are traceable to Ameritas' contract with DenteMax, even though plaintiffs never contracted directly with Ameritas. The plaintiffs naturally point to *Williams* as evidence that *DePhillips* has nothing to do with the PPO Act, while the defendants distinguish *Williams* as non-binding in our *Erie* inquiry.

III.

The plaintiffs ask that we certify this question to the Supreme Court of Louisiana. We may certify to that court dispositive questions of Louisiana law for which "there are no clear controlling precedents in the decisions of the supreme court[.]" SUP. CT. OF LA. R. XII, § 1. We consider several factors in deciding whether to certify a question since "[w]e are acutely aware that certification is not a panacea for resolution of those complex or difficult

state law questions which have not been answered by the highest court of the state." *In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 509 (5th Cir. 2010) (citation and internal quotation marks omitted). Those factors are:

> (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.

*McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 202 (5th Cir. 2020) (citation omitted). Each factor supports certifying the question about the nature of PPO Act claims.

The *Williams* decision increases the closeness of the questions before us. Louisiana certainly has an important interest in classifying PPO Act claims, which classification will have significant practical effects on Louisiana health care providers' ability to protect rights conferred by the PPO Act. *Cf. Katrina Canal Breaches*, 613 F.3d at 509 ("[C]ertification may be advisable where important state interests are at stake and the state courts have not provided clear guidance on how to proceed." (quotation marks and citation omitted)). Moreover, the determinative issue in this case can be concisely certified to the Supreme Court of Louisiana. *See Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 332 (5th Cir. 2018), *certified question accepted* (Oct. 26, 2018), *certified question answered*, 579 S.W.3d 53 (Tex. 2019); *Free v. Abbott Labs., Inc.*, 164 F.3d 270, 274 (5th Cir. 1999) (noting that certification is most advisable "where important state interests are at stake and the state courts have not provided clear guidance on how to proceed").

No. 21-30148

\* \* \*

We therefore certify the following question to the Supreme Court of Louisiana:

> Are claims arising under the Louisiana's Preferred Provider Organization Act, La. R.S. 40:2203.1, delictual or contractual for prescriptive purposes.

Should the Supreme Court of Louisiana accept our request for an answer to this question, we disclaim any intention or desire that it confine its reply to the precise form or scope of the question certified. Along with our certification, we transfer this case's record and the briefs submitted by the parties. We will resolve this case in accordance with any opinion provided on this question by the Supreme Court of Louisiana. Accordingly, the Clerk of this court is directed to transmit this certification and request to the Supreme Court of Louisiana in conformity with the usual practice of this court.



**A True Copy**
**Certified Mar 02, 2022**

*Tyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**