STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2021 CA 1472

BRILLIANT NATIONAL SERVICES, INC.

VERSUS

THE TRAVELERS INDEMNITY COMPANY AND LEXINGTON
INSURANCE COMPANY

JUDGMENT RENDERED: ___SEP 0 7 2022___

* * * * * * *

Appealed from
The Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number 656,308 • Section 24

The Honorable Donald R. Johnson, Presiding Judge

* * * * * * *

| | |
|---|---|
| James K. Ordeneaux<br>Scott H. Mason<br>G. Bruce Parkerson<br>New Orleans, Louisiana | COUNSEL FOR APPELLANT<br>PLAINTIFF/DEFENDANT-IN-<br>RECONVENTION—Brilliant<br>National Services, Inc. |
| Amy S. Malish<br>Maura Z. Pelleteri<br>New Orleans, Louisiana | COUNSEL FOR APPELLANTS<br>DEFENDANTS-IN-<br>RECONVENTION—Brilliant<br>National Services, Inc. and<br>Coastal Chemical Company,<br>LLC |
| Tina L. Kappen<br>Céleste D. Elliott<br>New Orleans, Louisiana | COUNSEL FOR APPELLEES<br>DEFENDANTS/PLAINTIFFS-IN-<br>RECONVENTION—The<br>Travelers Indemnity<br>Company, The Charter Oak<br>Fire Insurance Company, The<br>Phoenix Insurance Company,<br>and United States Fidelity<br>and Guaranty Company |

* * * * * * *

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

**WELCH, J.**

In this insurance coverage dispute, the plaintiff, Brilliant National Services, Inc. ("Brilliant"), appeals a summary judgment rendered in favor of the defendants—The Travelers Indemnity Company, The Charter Oak Fire Insurance Company, The Phoenix Insurance Company, and United States Fidelity and Guaranty Company (collectively, "Travelers" or "Travelers companies")—which dismissed all of Brilliant's claims against Travelers with prejudice and declared that Travelers has no duty to provide insurance coverage to Brilliant or Coastal Chemical Company, LLC ("CCC, LLC") under the policies at issue. We affirm.

In a related appeal—2021 CA 1471—Brilliant and CCC, LLC challenge a summary judgment rendered in favor of Lexington Insurance Company, which dismissed all of Brilliant's claims against Lexington with prejudice and declared that Lexington has no duty to defend or indemnify CCC, LLC.

## FACTS AND PROCEDURAL HISTORY

Brilliant filed suit against Travelers[1] (among other defendants), seeking contribution for the costs of defending CCC, LLC in a number of asbestos-exposure personal injury lawsuits filed in various state courts in Louisiana, beginning in 2011.[2] Brilliant alleged that the Travelers companies issued various general liability insurance policies to their insureds between 1969 and 1982 ("Travelers policies"). Brilliant alleged that certain plaintiffs in the underlying asbestos lawsuits claimed that CCC, LLC was the successor to an insured entity under the Travelers policies that allegedly manufactured, distributed, marketed, or sold asbestos-containing products. Brilliant claimed that if CCC, LLC was found

---

[1] Brilliant filed an original petition for damages, as well as first, second, and third supplemental and amending petitions for damages.

[2] Brilliant's original petition identified seventy-nine suits filed against CCC, LLC. Subsequently, one additional plaintiff filed suit against CCC, LLC. See **Phillip Morris Percle, Sr. v. ANCO Insulations, Inc.**, Docket No. 2019-1016, Civil District Court, Parish of Orleans, State of Louisiana. According to the record, all plaintiffs in the underlying asbestos lawsuits have since dismissed their claims against CCC, LLC, with the exception of the **Percle** lawsuit.

2

to be the successor to an entity insured under the Travelers policies, then the insured entity's rights under the policies transferred to CCC, LLC by operation of law. Brilliant further alleged that regardless of whether CCC, LLC was the successor of an entity insured under the Travelers policies, Travelers owed CCC, LLC a duty to defend based on the allegations raised in the underlying asbestos lawsuits and the terms and conditions of the Travelers policies. Accordingly, Brilliant sought declaratory judgment that Travelers owed a duty to defend CCC, LLC in the underlying asbestos lawsuits. Brilliant also sought judgment in its favor and against Travelers for damages; a 1/7 virile share from each of the Travelers companies for attorney's fees and costs paid by Brilliant in defense of CCC, LLC in the underlying asbestos lawsuits; and legal interest, costs, and all other relief to which Brilliant may be entitled.

Travelers answered, raising numerous affirmative defenses and filing a reconventional demand against Brilliant and CCC, LLC.[3] In the reconventional demand, Travelers sought a declaration that Brilliant and CCC, LLC have no rights under the Travelers policies and/or that there is no coverage for the contractual obligations assumed by Brilliant. Travelers further soughtdismissal of Brilliant's claims with prejudice, at its sole costs, and for all other equitable and legal relief deemed just and proper.[4]

Thereafter, Travelers moved for summary judgment, seeking a dismissal with prejudice of Brilliant's claims at Brilliant's costs. Travelers further sought a declaration that Travelers does not owe any insurance coverage obligations under

---

[3] Travelers answered Brilliant's original petition for damages. Thereafter, Brilliant filed first and second supplemental and amending petitions for damages, naming The Charter Oak Fire Insurance Company as an additional defendant. Travelers and The Charter Oak Fire Insurance Company responded to those petitions. Brilliant then filed a third supplemental and amending petition, adding The Phoenix Insurance Company and United States Fidelity and Guaranty Company as defendants, to which the Travelers companies responded. In its response, Travelers indicated that its answer, as amended, on behalf of all the Travelers companies superseded any prior answers and reconventional demands filed by Travelers and The Charter Oak Fire Insurance Company.

[4] Brilliant and CCC, LLC answered Travelers' reconventional demand.

any of the Travelers policies to Brilliant or CCC, LLC because neither Brilliant nor CCC, LLC is an "insured" or otherwise entitled to coverage under the Travelers policies.

Brilliant and CCC, LLC opposed Travelers' motion for summary judgment.[5] In a timely-filed reply memorandum, Travelers objected to two exhibits submitted by Brilliant and CCC, LLC in support of their opposition—Exhibit 4 and Exhibit 4A.

Following a hearing on Travelers' motion for summary judgment, the trial court took the matter under advisement and ordered the parties to submit post-hearing proposed findings of fact, burdens of proof, conclusions of law, rulings on Travelers' evidence objections, and a proposed judgment.

In a judgment signed on October 8, 2020, the trial court granted Travelers' motion for summary judgment; dismissed all of Brilliant's claims against Travelers with prejudice; and declared that Travelers does not have any coverage obligations under the Travelers policies to Brilliant or CCC, LLC because neither Brilliant nor CCC, LLC is an insured. The trial court adopted Travelers' proposed findings of fact and conclusions of law as its reasons for judgment. Brilliant and CCC, LLC now appeal.[6]

## SUMMARY JUDGMENT ON INSURANCE COVERAGE

Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be properly resolved within the framework of a motion for summary judgment. **George S. May Int'l Co. v. Arrowpoint Capital Corp.**, 2011-1865 (La. App. 1st Cir. 8/10/12), 97 So.3d 1167, 1171. Summary judgment declaring a lack of coverage under an insurance policy may not be

---

[5] The trial court granted Brilliant and CCC, LLC's *ex parte* motion to file their memorandum, statement of genuinely disputed material facts, and exhibits in opposition under seal.

[6] Brilliant and CCC, LLC filed a motion for devolutive appeal on December 10, 2020. The trial court signed an order of appeal on December 10, 2020, notice of which was transmitted by the Clerk of Court to the parties on December 11, 2020.

rendered unless there is no reasonable interpretation under which coverage could be afforded when applied to the undisputed material facts shown by the evidence supporting the motion. **Smith v. Moreau**, 2017-0003 (La. App. 1st Cir. 6/2/17), 222 So.3d 761, 765. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and impose and enforce reasonable conditions upon the policy obligations they contractually assume. **Hickey v. Centenary Oyster House**, 97-1074 (La. 10/20/98), 719 So.2d 421, 425. An insurer seeking to avoid coverage through summary judgment bears the burden of proving some exclusion applies to preclude coverage. **Smith**, 222 So.3d at 765.

Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. **Guste v. Lirette**, 2017-1248 (La. App. 1st Cir. 6/4/18), 251 So.3d 1126, 1129.[7] Where the facts are undisputed and the matter presents a purely legal question, summary judgment is appropriate. See **Landry v. Progressive Sec. Ins. Co.**, 2021-00621 (La. 1/28/22), ___ So.3d ___, ___, 2022 WL 263003, at *3.

## DISCUSSION

### DUTY TO DEFEND

In their first assignment of error, Brilliant and CCC, LLC argue that the trial court erred in declaring that Travelers had no duty to defend or indemnify CCC, LLC in the underlying asbestos lawsuits. In their related second assignment of

---

[7] In its brief on appeal, Travelers objected to the appellants' reliance on exhibits that were not attached to their opposition. Brilliant and CCC's opposition stated:

> In support of their Opposition, Brilliant [and CCC, LLC] adopt by reference and incorporate herein their Memorandum in Opposition to Lexington Insurance Company's Motion for Summary Judgment, along with the Affidavit, Exhibits[,] and Statement of Genuinely Disputed Material Facts.

To the extent Brilliant and CCC, LLC attempted to adopt by reference its opposition memorandum, affidavit, exhibits, and statement of disputed material facts that were filed in opposition to a different motion for summary judgment in the related case (2021 CA 1471), we note that only the documents filed in support of or in opposition to the motion for summary judgment before the court may be considered. See La. C.C.P. art. 966(A)(2) and (D)(2). In our *de novo* review, we only consider the evidence that was attached in support of Brilliant and CCC, LLC's opposition to Travelers' motion. See, *e.g.*, **Tillman v. Nationwide Mut. Ins. Co.**, 2020-0250 (La. App. 1st Cir. 2/22/21), 321 So.3d 1017, 1022, writ denied, 2021-00429 (La. 5/25/21).

5

error, the appellants argue that genuine issues of material fact exist as to whether CCC, LLC is the successor to Travelers' insured, *i.e.*, the entity that allegedly distributed the products at issue in the underlying asbestos lawsuits. The appellants argue these genuine issues of material fact should have precluded the trial court from granting summary judgment in Travelers' favor.

An insurer's duty to defend its insured arises solely under contract. **Arceneaux v. Amstar Corp.**, 2015-0588 (La. 9/7/16), 200 So.3d 277, 286. An insurer's duty to defend its insured is determined by the allegations of the plaintiff's petition, with the insurer obligated to furnish a defense unless from the petition, it is clear the policy unambiguously excludes coverage. **Guste**, 251 So.3d at 1133. If, assuming the allegations of the petition are true, there is both coverage under the policy and liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. **Guste**, 251 So.3d at 1133. An insurer's duty to defend suits on behalf of an insured presents a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case. See **Elliott v. Cont'l Cas. Co.**, 949 So.2d 1247, 1250 (La. 2/22/07), 949 So.2d 1247, 1250.

**The Travelers Policies: Is CCC, LLC an "insured"?**

In moving for summary judgment, Travelers argued that it had no duty to defend or indemnify CCC, LLC, nor its alleged subrogee, Brilliant, because CCC, LLC is not and has never been one of Travelers' "insureds" under any of the Travelers policies. Travelers' evidence submitted in support of its motion for summary judgment show that the Travelers companies issued the following policies:

*Phoenix Policy*

The Phoenix Insurance Company issued policy number L-69-92-87 ("Phoenix policy") to Coastal Chemicals, Inc. and Coastal Chemical Co. of

6

California, Inc. The Phoenix policy was effective from February 1, 1969, to February 1, 1970. The Phoenix policy's "duty to defend" provision set forth:

## I. COVERAGE Y— CONTRACTUAL BODILY INJURY LIABILITY
## COVERAGE Z—CONTRACTUAL PROPERTY DAMAGE LIABLITY

The company will pay on behalf of the insured all sums which the insured ... shall become legally obligated to pay as damages because of

Coverage Y. bodily injury or
Coverage Z. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of this suit are groundless, false[,] or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

The Phoenix policy defined "named insured" as:

"named insured" means the person or organization named in Item 1 of the declarations of this policy[.]

Item 1 of the Phoenix policy lists the "named insured" as Coastal Chemicals, Inc. and Coastal Chemical Co. of California, Inc. The Phoenix policy defined "insured" as:

"insured" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability[.]

The Phoenix policy defined "Persons Insured" as:

## II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

(a) if the named insured is designated in the declarations as an individual, the person so designated;

7

(b) if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated[,] and any partner or member thereof[,] but only with respect to his liability as such;

(c) if the named insured is designated in the declarations as other than an individual, partnership[,] or joint venture, the organization so designated[,] and any executive officer, director[,] or stockholder thereof while acting within the scope of his duties as such.

Coastal Chemicals, Inc. and Coastal Chemical Co. of California, Inc. were the "Persons Insured" under the Phoenix policy. There is no dispute that the Phoenix policy expired prior to the formation of CCC, LLC's predecessor, which was incorporated in 1987. Because neither CCC, LLC nor its predecessor was a party to the Phoenix policy, CCC, LLC cannot be a "named insured" under the Phoenix policy. Furthermore, neither CCC, LLC nor its predecessor falls into the definition of "insured" or "Persons Insured" under the Phoenix policy.

### *TIC Policies*

The Travelers Indemnity Company ("TIC") issued four pertinent general liability policies—first, policy number NSL-4203276 to Coastal Chemical, Inc. and Coastal Chemical of California, Inc. The policy was effective from February 1, 1970, to February 1, 1971. Second, TIC issued policy number NSL-6530600 to Coastal Chemical, Inc. and Coastal Chemical of California, Inc. The policy was effective from February 1, 1971, to February 1, 1972. Third, TIC issued policy number NSL-7603131 to Coastal Chemical, Inc. and Coastal Chemical of California, Inc. The policy was effective from February 1, 1972, to February 1, 1973. Finally, TIC issued policy number NSL-316A815-9 to the first Coastal Chemical Co., Inc. and Coastal Industries, Inc. The policy was effective from February 1, 1973, to February 1, 1974. The "duty to defend" provisions set forth:

**I. Coverage A—Bodily Injury Liability**
**Coverage B—Property Damage Liability**

8

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

Coverage A. *bodily injury* or

Coverage B. *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false[,] or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

The TIC policies defined "named insured" as:

"named insured" means the person or organization named in Item 1 of the declarations of this policy[.]

Item 1 of the declarations of the TIC policies list the "named insured" as Coastal Chemical of California, Inc.; Coastal Chemical Co., Inc.; and Coastal Industries, Inc. The TIC policies define "insured" as:

"insured" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage.

The TIC policies define "Persons Insured" as:

**II. Persons Insured**

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor;[8]

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated[,] and any partner or member thereof[,] but only with respect to his liability as such;

---

[8] The fourth TIC policy, number NSL-316A815-9, added to this subsection, "and the spouse of the named insured with respect to the conduct of such a business[.]"

(c) if the *named insured* is designated in the declarations as other than an individual, partnership[,] or joint venture, the organization so designated[,] and any executive officer, director[,] or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the *named insured*) or organization while acting as real estate manager for the *named insured*....

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the *insured* is a partner or member and which is not designated in this policy as a *named insured*.

Coastal Chemicals, Inc.; Coastal Chemical of California, Inc.; the first Coastal Chemical Co., Inc.; and Coastal Industries, Inc. were the "Persons Insured" under the TIC policies. There is no dispute that the TIC policies expired prior to the formation of CCC, LLC's predecessor, which was incorporated in 1987. Because neither CCC, LLC nor its predecessor was a party to the TIC policies, CCC, LLC cannot be a "named insured" under the TIC policies. Furthermore, neither CCC, LLC nor its predecessor falls into the definition of "insured" or "Persons Insured" under the TIC policies.

### *Charter Oak Policies*

The Charter Oak Fire Insurance Company ("Charter Oak") issued two pertinent general liability policies—first, policy number 650-729A350-3-COF-74 to the first Coastal Chemical Co., Inc.; Coastal Chemical Industries; and Revalray, Inc. The policy was effective from February 1, 1974, to February 1, 1975. Second, Charter Oak issued policy number 650-729A350-3-COF-75 to Coastal, Inc. and Revalray, Inc. The policy was effective from February 1, 1975, to February 1, 1976. The "duty to defend" provisions set forth:

**A. Insuring Agreements**

**1. Comprehensive General Liability—Coverage A (Bodily Injury) and Coverage B (Property Damage)—** The Travelers will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

(a) bodily injury; or
(b) property damage;
to which this insurance applies, caused by an occurrence.

The Travelers shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false[,] or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but The Travelers shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of The Travelers' liability has been exhausted by payment of judgments or settlements.

The Charter Oak policies defined "named insured" as:

> **"Named Insured"** means the person or organization named in Item 2 of the GENERAL DECLARATIONS.

Item 2 of the general declarations of the Charter Oak policies list the "named insured" as the first Coastal Chemical Co., Inc.; Coastal Chemical Industries; Coastal, Inc.; and Revalray, Inc. The Charter Oak policies define "insured" as:

> **"Insured"** means any person or organization qualifying as an Insured in the "Persons Insured" provision. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of The Travelers' liability.

The Charter Oak policies define "Persons Insured" as:

> **C. Persons Insured**
>
> **1. Coverages A and B**—Each of the following is an Insured to the extent set forth below:
> (a) if the Named Insured is designated in the GENERAL DECLARATIONS as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor[,] and the spouse of the Named Insured with respect to the conduct of such a business;
> (b) if the Named Insured is designated in the GENERAL DECLARATIONS as a partnership or joint venture, the partnership or joint venture so designated[,] and any partner or member thereof[,] but only with respect to his liability as such;
> (c) if the Named Insured is designated in the GENERAL DECLARATIONS as other than an individual, partnership[,] or joint venture, the organization so designated[,] and any executive officer, director[,] or

stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the Named Insured) or organization while acting as real estate manager for the Named Insured....

This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in the GENEARL DECLARATIONS as a Named Insured.

The first Coastal Chemical Co., Inc.; Coastal Chemical Industries; Coastal, Inc.; and Revalray, Inc. were the "Persons Insured" under the Charter Oak policies. There is no dispute that the Charter Oak policies expired prior to the formation of CCC, LLC's predecessor, which was incorporated in 1987. Because neither CCC, LLC nor its predecessor was a party to the Charter Oak policies, CCC, LLC cannot be a "named insured" under the Charter Oak policies. Furthermore, neither CCC, LLC nor its predecessor falls into the definition of "insured" or "Persons Insured" under the Charter Oak policies.

### *USF&G Policies*

United States Fidelity and Guaranty Company ("USF&G") issued three pertinent general liability policies—first, policy number 1 CC D 47495 to Coastal, Inc. The policy was effective from April 1, 1980, to April 1, 1981. Second, USF&G issued policy number 1 CC E 25259 to Coastal, Inc. The policy was effective from April 1, 1981, to April 1, 1982. Finally, USF&G issued policy number 1CC-017151046 to Coastal, Inc. The policy was effective from April 1, 1982, to November 1, 1982. The "duty to defend" provisions set forth:

**I Coverage A—BODILY INJURY LIABILITY**

**Coverage B—PROPERTY DAMAGE LIABILITY**

The Company will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of

A. **bodily injury** or

B. **property damage**

12

to which this insurance applies, caused by an **occurrence**, and the Company shall have the right and duty to defend any suit against the **Insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false[,] or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

The USF&G policies defined "named insured" as:

> **"Named Insured"** means the person or organization named in Item 1 of the declarations of this policy[.]

Item 1 of the declarations of the USF&G policies list the "named insured" as Coastal, Inc. The USF&G policies define "insured" as:

> **"Insured"** means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability[.]

The USF&G policies define "Persons Insured" as:

> **II. PERSONS INSURED**
>
> Each of the following is an **Insured** under this insurance to the extent set forth below:
>
> (a) if the **Named Insured** is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor…;[9]
>
> (b) if the **Named Insured** is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated[,] and any partner or member thereof[,] but only with respect to his liability as such;
>
> (c) if the **Named Insured** is designated in the declarations as other than an individual, partnership[,] or joint venture, the organization so designated[,] and any executive officer, director[,] or stockholder thereof while acting within the scope of his duties as such;

---

[9] The fourth TIC policy, number NSL-316A815-9, added to this subsection, "and the spouse of the named insured with respect to the conduct of such a business[.]"

(d) any person (other than an employee of the **Named Insured**) or organization while acting as real estate manager for the **Named Insured**....

This insurance does not apply to **bodily injury** or **property damage** arising out of the conduct of any partnership or joint venture of which the **Insured** is a partner or member and which is not designated in this policy as a **Named Insured**.

Coastal, Inc. was the "Persons Insured" under the USF&G policies. There is no dispute that the USF&G policies expired prior to the formation of CCC, LLC's predecessor, which was incorporated in 1987. Because neither CCC, LLC nor its predecessor was a party to the USF&G policies, CCC, LLC cannot be a "named insured" under the USF&G policies. Furthermore, neither CCC, LLC nor its predecessor falls into the definition of "insured" or "Persons Insured" under the USF&G policies.

## Successor Liability

Because Brilliant and CCC, LLC are not "Persons Insured," "named insureds," or "insureds" under the Travelers policies, CCC, LLC could only be entitled to coverage under the Travelers policies if CCC, LLC is the "successor" to an entity insured under the Travelers policies.

The following facts are pertinent to the issue of successor liability. The company alleged to have distributed the asbestos-containing products in the asbestos lawsuits was incorporated in 1958 as the first "Coastal Chemical Co., Inc." In 1974, the first Coastal Chemical Co., Inc. amended its charter to change its corporation's name to "Coastal, Inc." In 1987, a new corporation named "Coastal Chemical Co., Inc." was incorporated (*i.e.*, the second Coastal Chemical Co., Inc.). That same year, the newly incorporated second Coastal Chemical Co., Inc. acquired certain assets of Coastal, Inc. Coastal, Inc. remained in business and continued to operate after the 1987 asset transfer. In 2010, Coastal, Inc. merged with Coastal of Abbeville, LLC.

In 1998, CCC, LLC formed and merged with the second Coastal Chemical Co., Inc., becoming the surviving entity. Regarding the merger of CCC, LLC and the second Coastal Chemical Co., Inc., Brilliant specifically alleged: "when [the second] Coastal Chemical [Co., Inc.] acquired [Coastal, Inc.'s] assets in 1987, it did not assume the liabilities of [Coastal, Inc.] Accordingly, [CCC, LLC] did not acquire the liabilities of [Coastal, Inc.] when it merged with [the second] Coastal Chemical [Co., Inc.].

Despite this, appellants argue that because certain plaintiffs in the underlying asbestos lawsuits alleged that CCC, LLC is the successor to the first Coastal Chemical Company, Inc./Coastal, Inc., Travelers owes CCC, LLC a duty to defend, irrespective of whether the allegations of successor liability are ultimately proven, or whether the plaintiffs prevail. Even though CCC, LLC has repeatedly and expressly denied that it is the successor to the first Coastal Chemical Company, Inc./Coastal, Inc., the appellants argue that the plaintiffs in the underlying asbestos lawsuits would have to establish CCC, LLC's successor liability in order to recover. Regardless of whether the plaintiffs prevail, the appellants contend that Travelers owes CCC, LLC a duty to defend based on the asbestos plaintiffs' allegations.

The basic principle of corporate successor liability was set forth by the United States Supreme Court in **Golden State Bottling Co., Inc. v. National Labor Relations Board**:

> [T]he general rule of corporate liability is that, when a corporation sells all of its assets to another, the latter is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability.

414 U.S. 168, 182 n.5, 94 S.Ct. 414, 424, 38 L.Ed.2d 388 (1973). Louisiana Courts have followed this general rule of corporate successor liability. **J.D. Fields**

15

**& Co. v. Nottingham Const. Co., LLC**, 2015-0723 (La. App. 1ˢᵗ Cir. 11/9/15), 184 So.3d 99, 102.

Herein, the key consideration is whether the successor is in fact a "continuation" of the predecessor. See **J.D. Fields & Co.**, 184 So.3d at 103. Brilliant and CCC, LLC point out that certain asbestos plaintiffs alleged that CCC, LLC is a "continuation" of Coastal, Inc. and its former division, Coastal Chemical Co., Inc. The extent to which a predecessor and a successor have common shareholders, directors, officers, or even employees are pertinent considerations. Further, prior business relationships should be considered, as should the continuity of the identity of the business in the eyes of the public. **J.D. Fields & Co.**, 184 So.3d at 103. However, the threshold requirement to trigger a determination of whether successor liability is applicable under the "continuation" exception is that one corporation must have purchased all or substantially all the assets of another. **J.D. Fields & Co.**, 184 So.3d at 103 (citing **Pichon v. Asbestos Defendants**, 2010-0570 (La. App. 4ᵗʰ Cir. 11/17/10), 52 So.3d 240, 244, writ denied, 2010-2771 (La. 2/4/11), 57 So.3d 317). In the instant case, CCC, LLC has not argued that its predecessor—the second Coastal Chemical Co., Inc.—purchased all the assets of Coastal, Inc. in the 1987 asset transfer. CCC, LLC states that "Travelers' named insured, Coastal, Inc., sold *all its assets necessary* to operate a chemical distribution business to Coastal Chemical Co. Inc., [CCC, LLC's] predecessor by merger." (Emphasis added). There is no dispute that Coastal, Inc. retained assets and remained in business after the 1987 asset transfer.

The appellants argue that summary judgment was improper because there are genuine issues of material fact as to whether CCC, LLC is the successor to the first Coastal Chemical Company, Inc./Coastal, Inc.; however, there is no factual dispute on the issue of successor liability. There is no evidence before the court either in support of or in opposition to Travelers' motion for summary judgment as

to whether any of the Travelers policies were expressly transferred from any of Travelers' insureds to CCC, LLC's predecessor in the 1987 asset transfer or any other merger documents. Further, there are no allegations in the underlying asbestos lawsuits that CCC, LLC's predecessor acquired all of Coastal, Inc.'s assets and liabilities. Finally, CCC, LLC has expressly and repeatedly denied that CCC, LLC is the successor to the first Coastal Chemical Company, Inc./Coastal, Inc.

The asbestos plaintiffs' allegations that CCC, LLC is the successor to Coastal, Inc. are legal conclusions, not factual allegations. Any legal conclusions regarding successor liability are irrelevant to any determination of Travelers' defense obligation. It is well settled that allegations of fact contained in a petition, and not the conclusions, determine the obligation to defend. **Henly v. Phillips Abita Lumber Co.**, 2006-1856 (La. App. 1st Cir. 10/3/07), 971 So.2d 1104, 1114.

**"Coverage Follows Liability"**

Brilliant and CCC, LLC further argue that under the theory of "coverage follows liability," the right to recover under an insurance policy transfers by operation of law when the liability for which the coverage is sought also transfers by operation of law. "The right to recover under an insurance policy follows the liability that the insurer underwrote." See **P.R. Mallory & Co. v. Am. States Ins. Co.**, No. 54C01-0005-CP-00156 (Ind. Cir. Ct. July 29, 2004), 2004 WL 1737489, at *5 (unpublished) (citing **Northern Insurance Co. of New York v. Allied Mut. Ins. Co.**, 955 F.2d 1353, 1357 (9th Cir. 1992) ("the right to indemnity arising from [the policy] transferred together with the potential liability. This right to indemnity followed the liability rather than the policy itself")). We note, however, that the

17

**Northern Insurance** case from which this theory of "coverage follows liability" derives may no longer be good law.[10]

As noted by Travelers, the "coverage follows liability" theory has never been adopted in Louisiana.[11] Louisiana law is clear that liabilities do not automatically transfer, but must be in writing. La. C.C. art. 1821. Successor liability does not entitle a successor, by operation of law, to the insurance coverage of its predecessor in Louisiana. Any person alleging that CCC, LLC assumed the first Coastal Chemical Company, Inc./Coastal, Inc.'s delictual obligations must demonstrate that the assumption was in writing. Courts must look to the contract itself to determine whether liabilities were transferred.[12] See La. C.C. art. 1821; **J.D. Fields & Co.**, 184 So.3d at 102.

There is no evidence before the court in support of or in opposition to Travelers' motion for summary judgment as to whether any of the Travelers policies were expressly transferred from any of Travelers' insureds to CCC, LLC's predecessor in the 1987 asset transfer or in any other merger documents.[13]

---

[10] See **Axis Reinsurance Co. v. Telekenex, Inc.**, 913 F.Supp.2d 793, 808 (N.D. Cal. 2012). Subsequent decisions by California state courts raise questions as to the validity of the **Northern Insurance** rule, even in California. At least one California court of appeals has rejected outright the **Northern Insurance** rule. See **Gen. Accident Ins. Co. v. Superior Ct.**, 55 Cal. App. 4th 1444, 1454, 64 Cal. Rptr. 2d 781, 788 (1997).

[11] The U.S. Fifth Circuit Court of Appeals has also rejected the "coverage follows liability" theory in a case similar to the current matter, where a purchase agreement between two parties did not transfer a policy of insurance. The Fifth Circuit noted that the purchase agreement specifically excluded the insurance policy from the asset transfer agreement, holding that the "parties clearly intended for the insurance coverage to remain with [the policyholder]." **Keller Foundations, Inc. v. Wausau Underwriters Ins. Co.**, 626 F.3d 871, 876-78 (5th Cir. 2010).

[12] Louisiana may enforce certain post-loss transfers of liability insurance, entitling the assignee to certain rights:

> There is no public policy in Louisiana which precludes an anti-assignment clause from applying to post-loss assignments. However, **the language of the anti-assignment clause must clearly and unambiguously express that it applies to post-loss assignments.** Thus, it is necessary for the federal district court to evaluate the relevant anti-assignment clauses on a policy-by-policy basis to determine whether the language is sufficient to prohibit post-loss assignments.

(Emphasis added). **In re Katrina Canal Breaches Litig.**, 2010-1823 (La. 5/10/11), 63 So.3d 955, 964.

[13] In support of the "coverage follows liability" theory, the appellants cite to **AMEC Constr. Mgmt., Inc. v. Fireman's Fund Ins. Co.**, No. CIV.A. 13-718-JJB (M.D. La. May 9, 2014),

## "Eight-Corners Rule"

Brilliant and CCC, LLC argue that based on the "eight-corners rule," the allegations of the petitions in the underlying asbestos lawsuits and the terms of the Travelers policies determine whether Travelers owes CCC, LLC a duty to defend. The plaintiffs in the underlying asbestos lawsuits alleged they were exposed to asbestos-containing products that were supplied and distributed by CCC, LLC during the time period when the Travelers policies were issued to Coastal, Inc.; Coastal Chemical, Inc.; and the first Coastal Chemical Company, Inc. Overlapping with successor liability issues, certain asbestos plaintiffs alleged that CCC, LLC is the successor to the first Coastal Chemical Company, Inc. and Coastal, Inc. Accepting the asbestos plaintiffs' allegations as true, CCC, LLC would be liable for conduct that took place during the effective dates of the Travelers policies. In contrast, Travelers argues that there are no allegations against CCC, LLC in the underlying asbestos lawsuits that trigger coverage under the Travelers policies. Travelers contends that the appellants cannot rely on allegations of third parties that CCC, LLC is an insured of Travelers.

Referred to as the "eight-corners rule" by our Supreme Court in **American Home Assurance Co. v. Czarniecki**, 230 So.2d 253, 259 (La. 1969), an insurer must look to the four corners of the petition and the four corners of the policy to determine whether it has a duty to defend. **Vaughn v. Franklin**, 2000-0291 (La. App. 1st Cir. 3/28/01), 785 So.2d 79, 84, writ denied, 2001-1551 (La. 10/5/01), 798

---

2014 WL 1875264 (unpublished). In **AMEC**, the insurer filed a Fed. R. Civ. P. 12(b)(6) motion, seeking a dismissal of an alleged successor entity's complaint for "failure to state a claim upon which relief can be granted," which is similar to an exception of no cause of action in Louisiana state courts. The federal district court found that the complaint alleged facts sufficient to show that successor liability may exist under the corporate successor liability "continuation" exception, and that the alleged successor entity may be able to establish that its alleged predecessor's insurer may have a duty to defend and indemnify under the policy at issue. **AMEC Constr. Mgmt., Inc.**, 2014 WL 1875264, at *3. The appellants mischaracterize the **AMEC** case, however, by claiming that the federal district court held that rights under a liability policy transfer by operation of law. The **AMEC** court merely denied an insurer's Fed. R. Civ. P. 12(b)(6) motion. The court did not make any substantive holding on the "coverage follows liability" theory, nor on an insurer's duty to defend.

So. 2d 969. Cases applying the "eight-corners rule" hold that an insurer owes a duty to defend if, assuming the factual allegations are true, there would be both (1) coverage under the policy, and (2) liability to the plaintiff. **Maldonado v. Kiewit Louisiana Co.**, 2013-0756 (La. App. 1st Cir. 3/24/14), 146 So.3d 210, 218-19. When making this analysis, the allegations of the petition are liberally interpreted in determining whether they set forth grounds that bring the claims within the scope of the insurer's duty to defend. An insurer's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Although the allegations of the petition may ultimately turn out to be incorrect or untrue, the insurer is still obligated to provide a defense. **Vaughn**, 785 So.2d at 84. If, however, a petition does not allege facts within the scope of coverage, an insurer is not required to defend a suit against its insured. **Guste**, 251 So.3d at 1134.

Even though the asbestos plaintiffs allege that CCC, LLC supplied or distributed asbestos-containing products to the asbestos plaintiffs' jobsites, those allegations do not trigger coverage under the four corners of the Travelers policies. As discussed in detail above, the pertinent provisions in the Travelers policies clearly define "Persons Insured" and include only specific individuals in those definitions. None of the asbestos plaintiffs' allegations could, *even if proven*, transform CCC, LLC into an individual defined as a "Persons Insured" under the Travelers policies—*i.e.*, an executive officer, director, or stockholder of Coastal Chemicals, Inc. or Coastal Chemical Co. of California, Inc. under the Phoenix policy; an executive officer, director, or stockholder of Coastal Chemical, Inc.; Coastal Chemical of California, Inc.; or Coastal Industries, Inc. under the TIC policies; an executive officer, director, or stockholder of the first Coastal Chemical Co., Inc.; Coastal Chemical Industries; Coastal, Inc.; or Revalray, Inc. under the

20

Charter Oak policies; or an executive officer, director, or stockholder of Coastal, Inc. under the USF&G policies.

**OPPOSITION EVIDENCE**

In their third and final assignment of error, Brilliant and CCC, LLC argue that the trial court erred in excluding Exhibit 4 and Exhibit 4A, submitted by Brilliant and CCC, LLC in opposition to Travelers' motion for summary judgment. Exhibit 4 is an affidavit of Brilliant's authorized representative, Dennis St. George, who attested that he is familiar with Brilliant's business records. The affidavit states in pertinent part: "Attached as Exhibit A is a true and correct copy of certain portions of an Asset Purchase Agreement involving Brenntag, Inc." Exhibit 4A is a heavily redacted version of an apparent asset purchase agreement referenced by St. George in his affidavit.

In a timely-filed reply memorandum, Travelers objected to Exhibit 4 and Exhibit 4A:

> Travelers objects to Brilliant and [CCC, LLC's] submission of Exhibit 4 and Exhibit 4a, the almost completely redacted/incomplete copy of the Brilliant-CCC Agreement.... Brilliant should not be allowed to rely upon the Brilliant-CCC Agreement for any of its arguments which can hardly be said to be authenticated as being true and correct with heavy redactions and over at least 80 pages missing. There is a protective order in place and the documents have been filed under seal. There is no basis not [to] submit the entire Brilliant-CCC Agreement.[14]

"The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4). Additionally, La. C.C.P. art. 966(D)(2) sets forth that "[a]ny objection to a document shall be raised in a timely filed opposition or reply

---

[14] Travelers objected to Exhibit 4 to the extent the affidavit references the asset purchase agreement.

21

memorandum." Article 966(D)(2) further provides that the trial court "shall consider all objections prior to rendering judgment" and "shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider."

The trial court adopted Travelers' proposed findings of fact and conclusions of law as its reasons for judgment. In ruling on Travelers' objection, the trial court stated:

> Despite having a protective order and filing under seal, Brilliant has submitted as Exhibit 4A a heavily redacted document with over 80 missing pages. It is impossible to discern what the Brilliant-CCC Agreement provides without the definitions and other provisions. *See* §13.2.Documentary evidence—Original writing rule, 19 La. Civ. L. Treatise, Evidence And Proof §13.2 (2d ed.) The document itself could not be admitted, and the Brilliant Affidavit does not satisfy the basic requirements to make this document admissible.
>
> Affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. La. Code Civ. Proc. Art. 967(A). Brilliant's Affidavit is lacking any description as to what certain portions of the Brilliant-CCC Agreement are attached or even how the Affiant knows what is attached. The Affidavit does not satisfy the requirements of Article 967(A) because it does not establish that it was made on personal knowledge, show affirmatively that Affiant is competent to testify to the matters stated therein, or what portions of the Brilliant-CCC Agreement are even being attached. *See Unifund CCC Partners v. Perkins*, 2012-1851 (La. App. 1 Cir. 9/25/13); 134 So. 3d 626, 632; *Durand v. Graham*, 2019-1312 (La. App. 1 Cir. 6/12/20); --- So.3d ---, 2020 WL 3119036. Accordingly, Exhibit 4A and those portions of Exhibit 4 regarding Exhibit 4A are inadmissible. However, as set forth below, even if these exhibits were considered in ruling on Travelers' Motion, Brilliant would not be able to maintain a claim in contract against Travelers under Louisiana law.

Louisiana Code of Civil Procedure article 967(A) provides, in pertinent part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Personal knowledge encompasses only those facts that the affiant saw, heard, or perceived with his own senses. **Berard v. L-3 Communications Vertex Aerospace, LLC**, 2009-1202 (La. App. 1st Cir. 2/12/10), 35 So.3d 334, 349, writ denied, 2010-0715 (La. 6/4/10), 38 So.3d 302. Furthermore, an affirmative showing of competency cannot be established without a predicate showing of personal knowledge. **Unifund CCR Partners v. Perkins**, 2012-1851 (La. App. 1st Cir. 9/25/13), 134 So.3d 626, 631-32.

With regard to business records, records of regularly conducted business activity are not excluded by the hearsay rule, even though the declarant is available as a witness. See La. C.E. art. 803(6). A party who seeks to submit written hearsay evidence pursuant to La. C.E. art. 803(6) must authenticate it by a qualified witness. The witness laying the foundation for admissibility of the business records does not have to be the preparer of the records. A qualified witness only needs to be familiar with the record-keeping system of the entity whose business records are sought to be introduced. The custodian of the record or other qualified witness must explain the record-keeping procedures of the business and thus, lay the foundation for the admissibility of the records. **Midland Funding, LLC v. Stack**, 2020-1310 (La. App. 1st Cir. 10/21/21), 2021 WL 4901976, at *2 (unpublished), writ denied, 2022-00038 (La. 3/2/22), 333 So.3d 833.

St. George, by way of affidavit, states that he is "an authorized representative of Brilliant" and has "access to" and is "familiar with the business records [of] Brilliant, formerly known as Brenntag, Inc." St. George states that the attached sales agreement was "prepared or obtained in the regular course of business." While St. George's affidavit contains the assertion that he has "personal knowledge," the affidavit contains no facts or information setting forth the basis of his personal knowledge or his competency to testify to the matters stated in the

affidavit. The affidavit does not identify St. George's position of employment, if any, with Brilliant. It is not clear if St. George is a business records custodian of Brilliant or other qualified witness, nor is it clear if he is aware of the process by which Brilliant stores its business records. The affidavit does not disclose if St. George has ever actually reviewed the Asset Purchase Agreement or has any personal knowledge of its contents.

An affirmative showing of competency as required by La. C.C.P. art. 967(A) cannot be established without a predicate showing of personal knowledge. **Unifund CCR Partners**, 134 So.3d at 631. St. George's affidavit fails to establish any predicate fact showing that he has personal knowledge of the sales agreement and is competent to testify to the matters set forth in the affidavit. Therefore, the affidavit does not satisfy the requirements of Article 967(A), is not competent summary judgment evidence, was properly excluded by the trial court, and will not be considered by this court on *de novo* review. See **Unifund CCR Partners**, 134 So.3d at 632.

## DECREE

For the reasons discussed herein, we affirm the trial court's October 8, 2020 judgment. All costs of this appeal are assessed against the appellants, Brilliant National Services, Inc. and Coastal Chemical Company, LLC.

**AFFIRMED.**